

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN

XXXXXXXXXXXXXX

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Homer Leonard, Speaker
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. 0-3363
Re:  Constitutionality of proposed
"Citrus Marketing Act."

Your written request for an opinion from this department has been received and considered.  You have asked us for a ruling on the constitutionality of a proposed "Citrus Marketing Act," which you enclosed with your request.  The Act consists of eighteen pages.  Section 22 thereof provides as follows:

"SECTION 22.  This Act shall apply and be effective only in the areas of any three citrus fruit producting counties whose boundaries are contiguous to each other and whose aggragate population according to the last preceding Federal Census was not less then _____inhabitants."

The Forty-second Legislature in 1931, p. 838, ch. 350, defined the "Citrus Fruit Zone" as follows:

"Section 1.  The counties of Cameron, Willacy, Hidalgo, Starr, Zapata, Jim Hogg, Brooks, Kenedy, Kleberg, Nueces, Jim Wells, Duval, Webb, San Patricio, Refugio, Bee, Live Oak, McMullen, La Salle, Dimmit, Maverick, Zavala, Frio, Atascosa, Wilson, Kernes, DeWitt, Victoria, Goliad, Calhoun, and Aransas, are hereby designated and declared to be the Citrus Zone of the State of Texas and shall so be referred to in the future."

The Texas Almanac for 1941-42, at p. 214 says:

"* * *.  Nearly all of the Texas Crop comes from the Lower Rio Grande Valley, though there is some production in the Laredo area and Winter Garden.  There are small commercial movements of tangerines, lemons, limes and other citrus fruits from the Lower Valley.  * * * *"

The purpose of the "Texas Citrus Marketing Act" appears to be to regulate the marketing of the citrus fruits by imposing certain marketing rules and regulations, including the quantity of production and fixing the minimum price or "floor" at which the fruit is to be sold from the tree by the "producer". Basically, the theory of such regulation seems to be to enhance the purchasing power of the "producer" of citrus fruits and by improving his economic status, promote the public welfare and relieve chaotic economic conditions in the citrus fruit industry.

We can see no reasonable basis to support the action of the Legislature in its attempt to single out only three, of several, counties of the state of Texas, that are known to be producing citrus fruits and bridle those engaged in producing and marketing citrus fruits, in those three counties, with such a law as the "Texas Citrus Marketing Act." If the regulation could be said to be necessary and proper, under the police power, then its application under the proposed Act, would apply to only the producers and marketers in A, B, and C counties, while the producers and marketers of the same fruit under the same circumstances in E,F, and G counties would be entitled to market their fruit under their own conditions and set their own prices for which their fruits would be placed upon the market.

In 12 AMERICAN JURISPRUDENCE 144-146, inclusive, it is said:

" §478. APPLICATION OF LAW TO ALL MEMBERS. - A fundamental principle involved in classification is that it must meet the requirement that a law shall affect alike all persons in the same class and under similar conditions. If a classification in legislation meets the prerequisites indispensable to the establishment of a class that it be reasonable and not arbitrary, and be based upon substantial distinctions with a proper relation to the objects classified and the purposes sought to be achieved, as long as the law operates alike on all members of the class which includes all persons and property similarly situated, it is not subject to any objections that it is special or class legislation, and is not a violation of the Federal guaranty as to the equal protection of the laws. Hence, while classification is proper, there must always be uniformity within the class. If persons under the same circumstances and conditions are treated differently, there is arbitrary discrimination, and not classification.

" § 479. COMPLETENESS OF INCLUSION OF MEMBERS. - In order for a classification to meet the requirements of constitutionality, it must include or embrace all persons who naturally belong to the class. Such classification must not be based on existing circumstances only or so constituted as to preclude additions to the number included within a class, but must be of such a nature as to embrace all those who may thereafter be in similar circumstances and conditions. Furthermore, all who are in situations and circumstances relative to the subjects of the discriminatory legislation indistinguishable from those of the members of the class must be brought under the influence of the law and treated by it in the same way as are the members of the class. It is also settled that no one who does not properly belong to a class may be included therein.

"*******."

The same authority on pp. 151-153, inclusive, says:

" §481. SUBSTANTIAL DIFFERENCES: PROPER RELATIONSHIP TO OBJECT. - The general rule is well settled by unanimity of the authorities that a classification to be valid must rest upon material differences between the persons included in it and those excluded and, furthermore, must be based upon substantial distinctions. As the rule has sometimes been stated, the classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. Therefore, any law that is made applicable to one class of citizens only must be based on some substantial difference between the situation of that class and other individuals to which it does not apply and must rest on some reason on which it can be defended.
* * * *."

In 16 CORPUS JURIS SECUMDUM 1004-5, inclusive, with reference to discrimination as to localities, it is said:

"However, insofar as it grants privileges to, or places burdens on, individuals or limits or restricts their right, especially their right to engage in a particular business or occupation, a statute or ordinance may be invalidated by arbitrary or unreasonable classification or discrimination in respect of territory or locality."

Our Court of Criminal Appeals in the case of RANDOLPH vs. STATE, 36 S.W. (2d) 484, in holding an Act discriminatory and as an unreasonable classification, which applied to only certain counties of a certain population, and having to do with the selection and disqualification of prospective jurors by the jury commissioners, said:

"There would seem to be no relation to a man fitness for a jury service and the size of population of the county in which he resides. * * *.

"The Act under consideration, not only attempts to make a very small unit of population the basis for a method of selecting jurors which is different from the method prescribed by general law for other parts of the State, but also seeks to make ineligible for such jury service those who may not desire to claim their exemption but who are qualified jurors under the general laws. We are constrained to hold that the Act is discriminatory and, therefore, unconstitutional."

In EX PARTE SIZEMORE, (Ct. Crim. App.) 8 S.W. (2d) 134, the court said:

"A law which makes different punishments follow the same identical criminal acts in different political subdivisions of Texas violates both our State and Federal Constitutions. It fails to accord equal rights and equal protection of law, and a conviction under it is not in due course of the land."

In EX PARTE BAKER, (Ct. Cr. App.) 78 S.W. (2d) 610, an attack was made upon the validity of a city ordinance which required a much higher license fee to itinerate vendors of certain products than those who distributed local made products of the same class. The court said:

"An ordinance which attempts to distinguish between persons engaged in the same or like business merely on basis of their residence or the location of their business houses is in contravention of the constitutional provisions hereinabove quoted. We think such ordinance whether it purports to be an exercise of the police power or the power to tax is discriminatory in that it is not based upon any reasonable classification. * * *.

"It appears to us the ordinance under consideration was designed and its application would, if it were valid, establish a protective wall around bakeries located within the city of Temple and create a monopoly on the bakery business and deny to outsiders the same privileges and equal rights unless they paid an annual license fee of Fifty Dollars."

We think rules discussed are pertinent and applicable to the construction of Section 22 of the proposed Act.

We are, therefore, of the opinion that the proposed "Texas Citrus Marketing Act", is violative of Section 1 of Article 14 of the United States Constitution and Sections 3 and 19 of Article 1 of the Constitution of Texas, as being an unreasonable and arbitrary classification, discriminating against some producers of citrus fruit and favoring others in the same class and denying those in the same class equal protection of law.

Since we are of the opinion that Section 22 is contrary to the fundamental law of the land, we do not believe that it is necessary to pass upon the constitutionality of the remainder of the Act.

We trust that we have answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Harold McCracken
    Harold McCracken
    Assistant

HC:ob:wc

APPROVED MAY 26, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman